**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

TOWNE PARK, LLC, a Maryland limited liability company
450 Plymouth Road
Suite 300
Plymouth Meeting, Pennsylvania 19462

Plaintiff,

v.

BARRY CONAWAY, an individual
5084 Hunters Village Drive
Lebanon, Tennessee 37087

PARKING MANAGEMENT COMPANY, a Delaware limited liability company
3713 Charlotte Avenue
Nashville, Tennessee 37209

JORGE CARDOSO, an individual
7724 Interbay Boulevard
Apt. 212
Tampa, Florida 33616

Defendants.

Case No. ________________

**JURY DEMAND**

# COMPLAINT

Plaintiff Towne Park, LLC brings this complaint for damages and a preliminary injunction for breach of contract, misappropriation of trade secrets, and related torts, arising out of actions taken by its former employees Barry Conaway and Jorge Cardoso and competitor Parking Management Company, respectfully alleging as follows:

1. Plaintiff Towne Park, LLC ("Towne") is a Maryland LLC with its principal place of business at 450 Plymouth Road, Suite 300, Plymouth Meeting, Pennsylvania 19462.

2. Defendant Barry Conaway is an individual who, upon information and belief, resides at 5084 Hunters Village Drive, Lebanon, Tennessee 37087.

3. Defendant Parking Management Company ("PMC") is a Delaware LLC, with its principal place of business at 3713 Charlotte Avenue, Nashville, Tennessee 37209.

4. Defendant Jorge Cardoso is an individual who, upon information and belief, resides at 7224 Interbay Boulevard, Apartment 212, Tampa, Florida 33616.

**Jurisdiction and Venue**

5. This Court has original jurisdiction over Towne's claims under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*., pursuant to 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over Towne's state law claims under 28 U.S.C. § 1367(a) because they arise from a common nucleus of operative facts and form part of the same case or controversy.

7. This Court has personal jurisdiction over Conaway because Conaway resides in Tennessee.

8. This Court has personal jurisdiction over PMC because PMC's principal place of business is in Tennessee.

9. This Court has personal jurisdiction over Cardoso because the events giving rise to the claims against Cardoso occurred in Tennessee. Specifically, Cardoso visited Towne's office at Client A[1] to misappropriate and photograph Towne's confidential business information.

10. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Nashville, Tennessee, within the Middle District.

[1] The names of Towne's clients are anonymized in this Complaint. Towne will provide a key to the Court and Defendants.

## **Facts**

11. Towne is a leading national parking and hospitality services company. Towne provides valet parking, parking management, bell services, and other related services to hotels, resorts, and commercial properties across the country.

12. Towne serves clients within the Nashville, Tennessee market.

13. In the regular course of its business, Towne develops and maintains certain confidential and proprietary information concerning its current and prospective customers. Examples of such confidential information include, but are not limited to, budget forecasts, profit and loss statements, revenue spreadsheets (known internally as "RSS files"), client invoices, financial data, pricing information, customer lists, business plans, and other operational information. Towne's confidential information is not publicly available.

***Towne hires Conaway, and Conaway signs a Business Protection Agreement where he agrees to post-employment restrictions.***

14. On September 7, 2024, Conaway and Towne entered into a Business Protection Agreement ("Agreement").

15. A true and correct copy of the Agreement is attached to this complaint as Exhibit 1.

16. The Agreement contains, among other provisions, the following restrictive covenants:

a. A Non-Competition Covenant (Section 3.1), prohibiting Conaway from engaging in Competitive Activity for a period of twelve (12) months following the termination of his employment with Towne;

b. A Non-Solicitation of Customers Covenant (Section 3.2), prohibiting Conaway from soliciting Towne's customers for a period of twelve (12) months;

c. A Non-Disclosure and Confidentiality Provision (Section 4.1), prohibiting Conaway from revealing Confidential Information during and after his employment;

d. A Notification Requirement (Section 6.1), requiring Conaway to notify Towne in writing before accepting employment with a competitor and to provide the competitor with a copy of the BPA.

17. The Agreement defines a "Competing Service" as any service or process, and each and every component thereof, in existence or under development, that competes with, that is planned to compete with or that may in the future compete with, resembles, may be substituted for, may be used in the same or similar fashion, or performs the same or similar function, as any service of the Company, and each and every component thereof (§ 2.3).

18. Section 2.3 clarifies that a Competing Service is limited to the area or locations, during the final twelve (12) months of Conaway's employment with Towne, (1) where Conaway performed services or managed for Towne or (2) about which Conaway received Confidential Information.

19. The Agreement defines "Confidential Information" as all information not generally known to the public, in spoken, printed, electronic, or any other form, relating directly or indirectly to: data, results, technology, business or financial information, know-how, trade secrets, practices, techniques, methods, strategies, processes, developments, specifications, marketing reports, expertise, technology, data and procedures, pricing, forecasting, bidding and costing policies, sales, operating, recruitment, training and marketing strategies and techniques, strategic partners, business partners, customer, potential customer, or nonpublic financial information of the Company, and information belonging to third parties that has been disclosed to Company under an obligation of confidentiality (§ 2.2).

20. "Competitive Activity" is defined as direct or indirect participation in, performance of services for, employment by, ownership of any interest in, or assistance, promotion or organization of, any Competing Company (§ 2.4).

21. Within the definition of "Competitive Activity," "performance of services for" and "employment by" mean performing services similar to the services Conaway performed for Towne or being employed by a Competing Company in a position similar to the one Conaway held for Towne during the final twelve (12) months of Conway's employment with Towne, respectively (§ 2.4).

22. A "Competing Company" is any person, partnership, corporation, firm, limited liability company, association or other business entity, other than Towne, which designs, develops, sells, markets, distributes, or consults on a Competing Service or intends to do so or which could use Confidential Information to the detriment of Towne (§ 2.5).

23. The Agreement is governed by Pennsylvania law (§ 6.6).

24. Towne employed Conaway as a Director of Operations for the Client A account in Nashville, Tennessee.

25. Conaway oversaw valet operations, bell services operations, and scooter rental operations. He was also the client-facing relationship contact for Client A.

26. By virtue of his position, Conaway had access to Towne's Confidential Information for Client A and Client D, another Towne client in the Nashville market.

***Conaway, Cardoso, and PMC's misappropriation of Towne's Confidential Information.***

27. Cardoso is a former Towne employee.

28. Cardoso supervised Conaway while he was employed at Towne.

29. Cardoso now works for PMC.

30. In spring 2026, after Cardoso worked for Towne and while employed by PMC, he visited Client A.

31. During this visit, Cardoso told a Towne employee that he was taking his girlfriend out to lunch.

32. While at Client A, Cardoso entered the Towne office where Conaway worked, and where there are computers that have access to Towne's confidential and trade secret information.

33. Conaway asked Cardoso "what do you want to see?"

34. Cardoso asked to see three specific Towne clients on Conaway's work computer. The three Towne clients are Client B, Client C, and Client D.

35. An eyewitness Towne employee observed Cardoso take at least one photograph of the information displayed on Conaway's computer screen.

***After resigning, Conaway breaches the Agreement by deceiving Towne about his next employment destination and then engaging in Competitive Activity for a Competing Company in the Nashville area.***

36. Conaway submitted his resignation from Towne on or around July 16, 2026.

37. When Towne employees asked Conaway about his plans, Conaway expressly stated that he was leaving the parking services industry.

38. Conaway's last day of employment with Towne was on or around July 31, 2026.

39. Shortly thereafter, Towne learned that, contrary to his representations, Conaway in fact was employed by PMC.

40. PMC is a direct competitor of Towne both in the Nashville market and nationwide.

41. Conaway's acceptance of employment with PMC—a Competing Company as defined in the Agreement—constitutes Competitive Activity in direct violation of the Non-Competition Covenant set forth in Section 3.1 of the Agreement, which provides that all Competitive Activity is prohibited for twelve (12) months following termination of employment with Towne.

42. Conaway's employment by PMC to provide parking services within the Nashville market constitutes a breach of the Agreement.

43. Conaway did not provide written notification to Towne of his employment with PMC, a Competing Company, identifying the Competing Company and Conaway's job title and responsibilities, as required under the Agreement (§ 6.1).

44. Conaway's failure to provide the written notice required under Section 6.1 of the Agreement constitutes a breach of the Agreement.

45. To date, neither Conaway nor PMC has provided Towne with Conaway's job title and responsibilities at PMC.

46. On August 18, 2026, a Towne account manager attended a meeting with Client E, an existing Towne client. Conaway was present and appeared to be working for PMC.

47. Towne sent cease and desist letters to both Conaway and PMC both directly and through outside counsel (the "Letters"). The Letters were sent on August 12, 2026, and August 18, 2026, respectively. True and correct copies are attached as Exhibits 2, 3.

48. In the Letters, Towne demanded that Conaway immediately cease his employment with PMC and comply with the terms of the Agreement.

49. Counsel for both Conaway and PMC responded to the Letters denying that Conaway's employment violates the Agreement. True and correct copies are attached as Exhibits 4, 5.

50. PMC's General Counsel acknowledged that he had previously reviewed the Agreement in his August 19, 2026, response letter to Towne.

51. Conaway continues to work for PMC in the Nashville market.

***PMC's tortious interference and targeting Towne's clients in the Nashville market.***

52. PMC has been targeting locations where Towne provides services in the Nashville market.

53. Upon information and belief, PMC's current Nashville regional director of operations is a former Towne employee who has previously stated his intention to "take every single one of Towne's properties."

54. Upon information and belief, PMC was aware (or should have been aware) of Conaway's post-employment obligations to Towne before PMC hired Conaway. At a minimum, PMC had actual knowledge of these post-employment obligations through the August 12 and August 18, 2026 letters identified above. *See* Exhibit 3.

55. PMC hired Conaway with knowledge of, or in reckless disregard of, Conaway's restrictive covenants with Towne. PMC has continued to employ Conaway even after receiving a letter from Towne expressly identifying the Agreement on August 12, 2026.

## <u>COUNT I</u>

### Breach of Contract (Against Defendant Conaway)

56. Towne incorporates the above allegations.

57. The Agreement is valid and enforceable.

58. Conaway breached the Agreement's Non-Competition Covenant (Section 3.1) by accepting employment with PMC, a Competing Company, within twelve (12) months of the termination of his employment with Towne.

59. Conaway breached the Agreement's Non-Disclosure Provision (Section 4.1) by disclosing Towne's Confidential Information to Cardoso, an agent of PMC, including sensitive financial information concerning Towne's client accounts with Client D.

60. Conaway breached the Agreement's Notification Requirement (Section 6.1) by failing to notify Towne in writing of his employment with PMC.

61. As a direct and proximate result of Conaway's breaches, Towne has suffered and continues to suffer damages, including but not limited to, loss of its Confidential Information, loss of its competitive advantage in the Nashville market, and ongoing threats to its customer relationships within the Nashville market, which are worth millions of dollars to Towne.

62. Under the Agreement, Towne has the right to have the Agreement's provisions specifically enforced (§ 5.1).

63. Under the terms of the Agreement, Towne is entitled to damages for Conaway's breach of the Agreement, including its reasonable attorneys' fees and costs (§§ 5.1, 5.2).

**COUNT II**

**Tortious Interference with Contract (Against Defendant PMC)**

64. Towne incorporates the above allegations.

65. A valid and enforceable contract, the Agreement, existed between Towne and Conaway. The Agreement contains non-competition, non-disclosure, confidentiality, and non-solicitation of customers covenants.

66. PMC knew or should have known of the existence of the Agreement between Conaway and Towne and the restrictive covenants contained therein.

67. PMC's General Counsel acknowledged that he had previously reviewed the Agreement in his August 19, 2026, response letter to Towne.

68. PMC necessarily intended to induce Conaway to breach the Agreement by hiring him to provide parking services in the Nashville market in direct competition with Towne in violation of the Agreement's non-competition restrictive covenant.

69. PMC acted with malice, constituting the willful violation of a known right. Even after receiving formal written notice of the Agreement's restrictive covenants from Towne, PMC refused to terminate Conaway's employment and continued to employ him in willful disregard of Towne's contractual rights.

70. PMC's malice may be inferred from its conduct, including its refusal to discontinue Conaway's employment after being put on written notice by Towne.

71. Conaway breached the Agreement, including through his acceptance of and continued employment with PMC to provide parking services in the Nashville market in violation of the Agreement.

72. PMC's hiring and continued employment of Conaway was the proximate cause of Conaway's breach of the Agreement.

73. As a direct and proximate result of PMC's tortious interference, Towne has suffered and continues to suffer damages, including competitive harm from PMC's use of Conaway's knowledge of Towne's Confidential Information to solicit business from Towne in the Nashville market.

74. Under Tennessee Code § 47-50-109, it is unlawful to induce the breach of a lawful contract, and Towne is entitled to treble damages for PMC's tortious interference.

## COUNT III

**Civil Conspiracy (Against All Defendants)**

75. Towne incorporates the above allegations.

76. PMC, Conaway, and Cardoso entered into a common design to misappropriate Towne's Confidential Information and use it to bid against Towne, solicit Towne's clients, and divert Towne's client portfolio in the Nashville market to PMC.

77. The purpose of the conspiracy was unlawful, including breach of the Agreement between Towne and Conaway, tortious interference with the Agreement in the form of PMC's inducement of Conaway's breach of the Agreement's restrictive covenants, and misappropriation of Towne's Confidential Information by Conaway, PMC, and Cardoso.

78. In furtherance of the conspiracy, Conaway committed the following overt acts: (1) Disclosure of Towne's Confidential Information to Cardoso, a PMC employee, by displaying Confidential Information concerning Towne's Nashville clients on his computer screen in direct violation of the Agreement's confidentiality and non-disclosure provisions; (2) permitting Cardoso to photograph the Confidential Information; and (3) accepting employment with PMC to provide parking services in the Nashville market in violation of the Agreement's restrictive covenants.

79. In furtherance of the conspiracy, PMC committed the following overt acts: (1) Committing tortious interference with contract by hiring Conaway despite PMC's prior knowledge of the Agreement, as alleged above; (2) continuing to employ Conaway after receiving formal notice from Towne of Conaway's contractual restrictions; (3) submitting proposals to both Client A and Client B to be their service provider for both valet and bell services, which are services Towne currently provides to those clients.

80. PMC, through its Nashville District Manager, who is a former Towne employee, stated to Towne's District Manager that PMC's goal is to "take every single one of Towne's properties."

81. In furtherance of the conspiracy, Cardoso committed the following overt acts while acting as an agent of PMC: (1) Visiting the Client A office in spring 2026 and asking Conaway to show him Confidential Information concerning three Towne clients, Client B, Client C, and Client D; and (2) misappropriating Towne's Confidential Information when he photographed the Confidential Information displayed on Conaway's computer screen.

82. As a direct and proximate result of the conspiracy and Conaway, PMC, and Cardoso's overt acts in furtherance thereof, Towne has suffered and continues to suffer damages, including competitive harm, loss of its Confidential Information, and an ongoing threat to its client relationships in the Nashville market.

## COUNT IV

**Misappropriation of Trade Secrets Under the DTSA and TUTSA (Against All Defendants)**

83. Towne incorporates the above allegations.

84. Under the Defend Trade Secrets Act ("DTSA"), an owner of a trade secret that is misappropriated may bring a civil action. 18 U.S.C. § 1836(a).

85. The DTSA defines a "trade secret" as all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3).

86. In relevant part, the DTSA defines "misappropriation" as (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who (i) used improper means to acquire knowledge of the trade secret; (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had used improper means to acquire the trade secret;

acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret. 18 U.S.C. § 1839(5).

87. Under the DTSA, the term "improper means" (A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and (B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition. 18 U.S.C. § 1839(6).

88. Tennessee's Uniform Trade Secrets Act ("TUTSA") is codified as Tenn. Code Ann. §§ 47-25-1701 to 47-25-1709.

89. In relevant part, the TUTSA defines "misappropriation" as (A) an acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) the disclosure or use of a trade secret of another without express or implied consent by a person who: used improper means to acquire knowledge of the trade secret; or at the time of disclosure or use, knew or had reason to know that that person's knowledge of the trade secret was: derived from or through a person who had utilized improper means to acquire it; acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. § 47-25-1702(2).

90. "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or limit use, or espionage through electronic or other means. § 47-25-1702(1).

91. The TUTSA defines "trade secret" as information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern,

compilation, program, device, method, technique, process, or plan that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. § 47-25-1702(4).

92. Although Towne's investigation is ongoing, Towne is aware that Conaway had access to trade secret information concerning Client D, an individual client location that Cardoso asked to see. The trade secret information includes, but is not limited to, site-specific revenue data, including Revenue Spreadsheets ("RSS files") showing month-to-month revenue and budget forecasts and financial projections (collectively, "Trade Secrets").

93. Towne's Trade Secrets derive independent economic value from not being generally known to persons who can obtain economic value from their disclosure or use, including Towne's competitors such as PMC.

94. A competitor with access to Towne's Confidential Information and Trade Secrets could calculate the pricing and/or revenue share percentage to offer clients to undercut Towne and divert Towne clients to PMC.

95. Towne took reasonable measures to maintain the secrecy of its Trade Secrets, including: (a) requiring employees with access to such information to execute Business Protection Agreements containing confidentiality, non-disclosure, and return-of-information obligations; (b) maintaining the information on electronic systems, including SharePoint and Power BI, that require authentication and are accessible only to authorized personnel with appropriate access credentials; and (c) requiring VPN access for remote retrieval of certain financial data.

96. The Trade Secrets have substantial value to Towne and its competitors. Towne invested significant time and resources developing its client relationships in the Nashville market, its pricing models, client relationships, and financial data over many years of operations.

97. Towne's Trade Secrets could not readily be acquired by non-employees and non-clients through legitimate, independent means.

98. Defendants misappropriated or, alternatively and at minimum, threatened to misappropriate Towne's Trade Secrets through improper means. In approximately spring 2026, Cardoso, who was employed by PMC, visited the Client A office and requested that Conaway display confidential financial data for three specific Towne client locations: Client B, Client C, and Client D.

99. Conaway disclosed the requested information to Cardoso by pulling it up on his work computer in direct violation of the Agreement's non-disclosure and confidentiality provisions.

100. Cardoso photographed the information displayed on Conaway's computer screen.

101. Conaway's apparent disclosure of Towne's Trade Secrets to Cardoso, an employee of PMC (Towne's direct competitor), constituted knowing and improper disclosure.

102. Conaway knew or had reason to know the information disclosed to Cardoso regarding Towne's client sites was confidential and proprietary.

103. Conaway had acknowledged in the Agreement that his position provided access to trade secret information and had agreed not to reveal Confidential Information to any person or entity.

104. Cardoso's acquisition of the Trade Secrets was improper.

105. Cardoso was a former Towne employee who had no legitimate access to any data concerning Client B, Client C, and Client D.

106. Although discovery is necessary to determine what happened with Towne's information, there is at least a threatened misappropriation because Cardoso was employed by PMC, who competes against Towne in the Nashville market.

107. PMC's ability to undercut Towne's pricing and target specific Towne accounts would be facilitated by its access, through Conaway and Cardoso, to Towne's Trade Secrets and Confidential Information.

108. Towne believes and therefore alleges that these actions were willful and malicious because Conaway knowingly violated his contractual obligations by disclosing Trade Secrets to Cardoso, a PMC employee. Cardoso deliberately sought out and photographed Confidential Information to which he had no right to access. PMC continues to employ Conaway, and Cardoso and Conaway now deny that the incident occurred, indicating consciousness of guilt.

109. The threat of continued misappropriation is actual and immediate. Conaway continues to work for PMC in the Nashville market and retains knowledge of Towne's Trade Secrets, including site-specific revenue data, pricing structures, and profitability information for approximately fifty (50) to sixty (60) Towne client sites.

110. PMC continues to aggressively target Towne's Nashville portfolio.

111. The risk of ongoing use or disclosure of Towne's Trade Secrets is substantial.

112. As a direct and proximate result of Defendants' misappropriation or threatened misappropriation of Towne's Trade Secrets, Towne will suffer irreparable harm for which there is no remedy at law, including loss of its client relationships.

## PRAYER FOR RELIEF

WHEREFORE, Towne respectfully requests that this Court enter judgment in its favor and enter a judgment in its favor against Defendants, jointly and severally where applicable, and award Towne the following relief:

A. Damages in an amount to be determined as of the time of judgment;

B. Treble damages pursuant to Tenn. Code Ann. § 47-50-109 for Defendant PMC's tortious interference with contract;

C. Injunctive relief regarding the misappropriation of trade secrets and restrictive covenants;

D. Exemplary damages in an amount not more than two times the amount of damages awarded pursuant to 18 U.S.C. § 1836(b)(3)(C) and Tenn. Code Ann. § 47-25-1704(b);

E. Attorneys' fees and costs pursuant to Sections 5.1 and 5.2 of the Agreement, 18 U.S.C. § 1836(b)(3)(D), and Tenn. Code Ann. § 47-25-1705;

F. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

G. A preliminary injunction enjoining PMC from employing Conaway in violation of the Agreement, through July 2027 and enjoining Conaway, PMC, and Cardoso from using Towne's Confidential Information and Trade Secrets; and

H. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims and issues so triable.

Date: August 28, 2026

*<u>/s/ Katherine Wright Morrone</u>*

Katherine Wright Morrone
BPR No. 043658
VENABLE LLP
600 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 344-4000 phone
(202) 344-8300 fax
KWMorrone@venable.com

Joshua Counts Cumby
BPR No. 037949
Adams & Reese LLP
1600 West End Avenue, Suite 1400
Nashville, Tennessee 37203
(615) 259-1450 phone
(615) 259-1470 fax
Joshua.Cumby@arlaw.com

*Counsel for Plaintiff Towne Park, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing will be served upon Defendants along with service of the Summons in accordance with Federal Rule of Civil Procedure 4.

This 28th Day of August, 2026

*/s/ Katherine Wright Morrone*
Katherine Wright Morrone

*Counsel for Plaintiff Towne Park, LLC*